UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
IRMA BYNUM,

                        **MEMORANDUM AND ORDER**
         Plaintiff,            11-CV-5111 (FB)

   -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

         Defendant.
-------------------------------------------------------------x

*Appearances:*

| *For the Plaintiff:* | *For the Defendant:* |
|---|---|
| DOUGLAS C. J. BRIGANDI, ESQ. | LORETTA E. LYNCH, ESQ. |
| 214-11 Northern Blvd., Suite 201 | United States Attorney |
| Bayside, NY 11361 | SCOTT R. LANDAU, ESQ. |
| | Assistant United States Attorney |
| | Eastern District of New York |
| | 271 Cadman Plaza East |
| | Brooklyn, NY 11201 |

**BLOCK, Senior District Judge:**

       Plaintiff Irma Bynum seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is affirmed; accordingly, the Commissioner's motion is granted and Bynum's complaint is dismissed.

                                                                  **I.**

       This case has a lengthy procedural history. As a result of work-related accidents in 1994 and 1996, Bynum injured her back, leg, hand, wrist, shoulders, knee, and ankle. On

May 20, 1999, Bynum filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of May 22, 1996. After the Social Security Administration denied her applications, she requested a hearing before an Administrative Law Judge ("ALJ"). On February 12, 2001, ALJ Seymour Fier concluded that Bynum was not disabled. AR 10-19.[1] The Appeals Council denied Bynum's request for review, prompting her to seek judicial review. Judge Gleeson granted the Commissioner's motion to remand for further proceedings, finding that ALJ Fier failed to develop the record as to the inconsistent opinions of Dr. Malik M. P. Akhtar, a treating physician, and finding that evidentiary gaps existed as to Bynum's hospital visits. *See Bynum v. Barnhart*, 02-cv-3443 (E.D.N.Y. Apr. 30, 2003); AR 315-23.

Upon remand, ALJ Fier conducted a hearing, which Bynum did not attend. On June 21, 2006, he determined that Bynum was not disabled. AR 328-36. The Appeals Council, however, vacated this decision and remanded the case to a different ALJ on the grounds that there was no indication that contact procedures were followed when Bynum did not appear at her hearing or that any attempt was made to obtain the missing hospital records. AR 337-41.

Following this remand, ALJ Hazel Strauss conducted two more hearings[2] and

---

[1] Although ALJ Fier found that Bynum suffered from the severe impairments of arthritis, and lumbosacral and cervical sprain/strain, he found that she had the residual functional capacity to perform the full range of light work. AR 18.

[2] Bynum was absent from the hearing on April 3, 2008, but present at the one on February 19, 2009.

then concluded, on May 26, 2009, that Bynum was not disabled. AR 298-313.[3] The Appeals Council again remanded the case for further administrative proceedings. AR 373-41. The Appeals Council found that ALJ Strauss did not evaluate Bynum's obesity, improperly determined that Bynum could perform past work as an electrical assembler even though she had not performed that work within the applicable 15-year period for purposes of SSI benefits, and did not adequately question the vocational expert about available work. AR 375-76.

After this third remand, ALJ Strauss conducted a final hearing and concluded on September 3, 2010 that Bynum was not disabled. Applying the familiar five-step process, the ALJ found that: (1) Bynum had not engaged in substantial gainful activity since May 22, 1996, the alleged onset date; (2) her lumbar disc disease qualified as a severe impairment, while her cervical spine disease, obesity,[4] and alleged impairments to the shoulders, ankles, and hands did not, AR 250; (3) her impairment did not meet the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1; and (4) she "is capable of performing past relevant work as an electrical assembler and bank teller as the work is generally performed," AR 260.[5] The final

---

[3]ALJ Strauss determined that only Bynum's lumbar disc disease qualified as a severe impairment and that she had the residual functional capacity to perform light work with limitations on bending, crouching, stooping, crawling, and kneeling. AR 304.

[4]Specifically, ALJ Strauss found no evidence that Bynum's obesity has an adverse impact on her co-existing impairments or her ability to sustain activity on a regular and continuing basis, concluding that Bynum's "obesity does not significantly impact her ability to perform basic work activities and therefore, is non severe." AR 250. The ALJ further stated that "[e]ven if her obesity were to be considered severe, the evidence supports the residual functional capacity." AR 250.

[5]Because the ALJ found Bynum capable of performing past relevant work, there was no need to analyze under step five whether any jobs existed in significant numbers in the national economy that she could perform.

conclusion was based on the ALJ finding that Bynum "has the residual functional capacity to perform light work or work that involves lifting/carrying 20 to 25 pounds occasionally, 10 pounds frequently, standing, walking and sitting 6 out of 8 hours." AR 251. In addition, the ALJ found that Bynum "should avoid frequent repetitive bending, can occasionally crouch, stoop, crawl and kneel," and "should avoid working in cold and damp environments." AR 251. The ALJ also noted that Bynum "does not have any limitations for fingering and grasping, has no upper extremity limitations in manipulation," and "does not have communication or visual limitations." AR 251.

The Appeals Council denied Bynum's request for review, rendering the Commissioner's decision to deny benefits final. Bynum timely sought judicial review.

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Bynum challenges ALJ Strauss's disability determination, arguing that the Commissioner erred by (A) violating the treating physician rule, and (B) improperly crediting the opinions of certain medical experts regarding listed impairments. As discussed below, these arguments are without merit.

**A. The Treating Physician Rule**

Bynum argues that ALJ Strauss failed to properly apply the treating physician

4

rule. Under the rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). Both Dr. Leon Bernstein, an orthopedic surgeon who examined Bynum once in 1997, and Dr. Malik M. P. Akhtar, a physician who treated Bynum between 1993 and 1999, opined that Bynum was disabled. *See* AR 181, 183. Bynum contends that these opinions "are entitled to conclusory effect" in "the absence of substantial contradiction." Pl.'s Mem. 13. The Court concludes that the ALJ did not violate the treating physician rule because: (1) a medical source's conclusion that an individual is disabled is not entitled to controlling weight; (2) a conclusion as to disability status made in the Workers' Compensation context is not binding; and (3) the conclusions of Dr. Bernstein and Dr. Akhtar are not supported by clinical findings and other evidence in the record.

As an initial matter, the treating physician rule does not require deference to Dr. Bernstein's and Dr. Akhtar's conclusions that Bynum is disabled because the "ultimate finding of whether a claimant is disabled and cannot work" is an issue reserved to the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "[S]tatement[s] by a medical source that you are 'disabled' or 'unable to work'" are not "medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)-(d)(1), 416.927(d)-(d)(1). As such, the regulations make clear that the Commissioner need "not give any special significance to the source" of those opinions. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Snell*, 177 F.3d at 133. Thus, Dr. Bernstein's and Dr. Akhtar's assessments of Bynum's "disability status" are

5

not entitled to controlling weight since the treating physician rule does not govern issues reserved to the Commissioner. *See Earl-Buck v. Barnhart*, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006) ("A treating source's statement that plaintiff 'is totally disabled,' . . . is not considered a 'medical opinion' under the treating physician's rule to which controlling weight should be assigned because it represents an opinion on an issue reserved to the Commissioner.")

Second, Dr. Akhtar and Dr. Bernstein opined that Bynum was disabled only on Workers' Compensation forms. *See* AR 181, 183, 546. ALJ Strauss rightly noted that different eligibility requirements apply to disability determinations under the two frameworks. *See* AR 256; *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (stating that because "the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act," "an opinion rendered for purposes of workers' compensation is not binding on the Secretary"). Even "a determination made by another agency that you are disabled . . . is not binding" since the ALJ "must make a disability . . . determination based on social security law." 20 C.F.R. §§ 404.1504, 416.904. Thus, ALJ Strauss did not err by declining to give controlling weight to the opinions regarding disability in the Workers' Compensation context.

Finally, as noted above, a treating physician's opinion is controlling only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also* 416.927(c)(2) (same). ALJ Strauss adequately explained why Dr. Akhtar's and Dr. Bernstein's conclusions were not supported by clinical findings and other record evidence. *See* AR 254-57. Dr. Bernstein only examined Bynum on one occasion. He observed that her

6

lumbar spine had no gross deformity, her gait was normal, and she had full range of motion in her lower extremities. AR 179. An MRI of the cervical spine was normal, and an x-ray of the lower back showed "spina bifida occulta at T12 and L1, otherwise normal." AR 180. Dr. Bernstein indicated that, without an MRI of the lumbar spine, he had "not been able to formulate the etiology of the persistent low back pain and parasthesias." AR 180. Notwithstanding this admission, he opined on the Workers' Compensation form that she was totally disabled due to lumbar spine derangement. *See* AR 181. Similarly, although Dr. Akhtar determined that Bynum exhibited post-traumatic arthritis in her ankles and feet, the record does not contain any diagnostic evidence to support this. Dr. Akhtar's findings of cervical and lumbar radiculopathy and shoulder impingement likewise lack support in the record. Moreover, Dr. Akhtar opined in 1999 that Bynum could lift or carry up to 15 pounds, and could sit, stand, or walk for up to 6 hours per day. AR 135.[6]

In addition, Dr. Steven Calvino, who conducted an orthopedic examination in June 2008 at the agency's request, observed that Bynum's gait was normal, she walked on her heels and toes without difficulty, her hand and finger dexterity was intact, and she had full grip strength in both hands. AR 551. He also noted full range of motion of her upper and lower extremities. AR 552. Although Dr. Calvino noted that Bynum's forward flexion and extension of her spine was limited due to pain, he believed that she did not "put forth a fair effort in range of motion of the spine" and that her overall prognosis was good. AR 552.

Accordingly, ALJ Strauss did not err by declining to rely on the unsupported

---

[6]Although the district court's remand order had instructed the ALJ to attempt to obtain additional evidence from Dr. Akhtar to fill in gaps and resolve inconsistencies, these attempts were unsuccessful due to Dr. Akhtar's death in 2004. *See* AR at 258.

7

conclusions of Dr. Bernstein and Dr. Akhtar.

**B. Evaluation of Whether Bynum Met or Equaled a Listed Impairment**

Bynum also argues that ALJ Strauss erred by not giving proper weight to the opinions of two medical experts regarding whether she met or equaled a listed impairment.

Dr. Richard S. Goodman, a medical expert, testified at the December 6, 2000 hearing before ALJ Fier. He initially stated that Bynum does not meet any listed category but then noted that "[c]linically" her rheumatoid arthritis "could . . . be 1.02 or the equivalent." AR 55.[7] He cautioned, however, that "[w]e're missing the objective laboratory studies" and that "positive laboratory studies . . . are required." AR 55. ALJ Strauss determined, in line with Dr. Goodman's observations, that no diagnostic evidence demonstrated post-traumatic arthritis. *See* AR 258. Although Dr. Akhtar reached a contrary conclusion, his conclusions — as previously noted — are not adequately supported by medical evidence in the record. Thus, ALJ Strauss did not error in declining to find that Bynum met or equaled Listing 1.02. AR 258.

Dr. Donald Goldman, an orthopedic expert, testified at the April 3, 2008 hearing before ALJ Strauss. He opined that Bynum's lumbar spine impairment met Listing 1.04. *See* AR 809. However, Dr. Edward Spindell, an orthopedic surgeon, testified as an expert at the February 19, 2009 hearing that Bynum did not meet or equal the criteria for Listing 1.02, 1.04, or any other listing. *See* AR 684-87; 700-03. Regarding Listing 1.02, Dr. Spindell noted that Bynum "doesn't have any major destructive joint destruction, and she is able to ambulate effectively as it's defined in the listings." AR 686. He also noted that she does not use crutches

---

[7]Prior to 2002, section 1.02 set forth the criteria for active rheumatoid arthritis and other inflammatory arthritis. *See* 66 Fed. Reg. 58010 *et seq.* (Nov. 19, 2001).

or a walker, and that she can drive. AR 686. Regarding Listing 1.04, Dr. Spindell testified that "there's no evidence of nerve root compression," the straight leg testing was negative, and there was no spinal arachnoiditis or stenosis. AR 685-86.

ALJ Strauss did not err in declining to rely on Dr. Goldman's opinion that Bynum met Listing 1.04. In forming his opinion, Dr. Goldman relied heavily on Dr. Bernstein's statement that Bynum has low back pain and parasthesias. AR 809. Yet this statement merely represents Bynum's report of her own symptoms to Dr. Bernstein. *See* AR 180. As noted above, Dr. Bernstein acknowledged that he lacked an MRI and thus could not "formulate the etiology of the persistent low back pain and parasthesias." AR 180. ALJ Strauss also adequately explained her reasons for discounting the other evidence cited by Dr. Goldman. *See* AR 259. For example, Dr. Goldman interpreted Dr. Bernstein's report as indicating a positive straight leg raising test even though the report does not make that finding. In addition, Dr. Spindell had the benefit (but Goldman did not) of being able to review Dr. Calvino's June 2008 report, which opined that Bynum did not put forth a fair effort in her range of motion of the spine and neck and that she had no restrictions based on his evaluation. Accordingly, the Court finds that the ALJ's determination that Bynum's impairments did not meet or medically equal Listing 1.04 was a "reasonable interpretation of the medical evidence in the record." *Brown v. Apfel*, 174 F.3d 59, 65 (2d Cir. 1999).

Review of the record demonstrates that substantial evidence supports the ALJ's determination that Bynum was not disabled under the meaning of the Act. As this disability determination was based upon careful consideration of the full evidentiary record, there is no reason to disturb it.

## III

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, the final decision to deny benefits under the Act is affirmed, and Bynum's complaint is dismissed.

**SO ORDERED.**

                                                  /s/Frederic Block
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
May 3, 2013